ORDERED.

Dated: June 30, 2017

*Cynthia C. Jackson*
Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

JOHN MICHAEL EDDY,                          Chapter 7
NANCY ELIZABETH EDDY,                  Case No.: 6:12-bk-04736-CCJ

    Debtors.
_____/

MEMORANDUM OPINION
ON TRUSTEE'S OBJECTION TO CLAIM

    This matter came before the Court on the objection of Marie E. Henkel, as Chapter 7 Trustee, to a proof of claim filed by the John Michael Eddy Trust of 1982 (the "JME Trust"), an insider of the Debtors. By the objection, the Chapter 7 Trustee asks the Court to disallow the entire claim, or in the alternative, to equitably subordinate the claim to all other claims in the case.

    The Court finds that the JME Trust's proof of claim is valid and allowed under Section 502 of the Bankruptcy Code. The Court determines however, that because the JME Trust actively participated in and directly benefited from the Debtors' fraudulent scheme to keep assets away from other creditors, its claim must be equitably subordinated. To hold otherwise would not only

allow the JME Trust to share in the very assets it helped the Debtors hide, it would also result in the violation of the statutory distribution scheme of the Bankruptcy Code.

Background

This Chapter 7 case is complex and has been pending before this Court since 2012. This objection to claim is the last significant matter which the Court must resolve before the Chapter 7 Trustee may make distributions to creditors. The facts are either undisputed or have already been adjudicated by the Court in connection with adversary proceedings brought by the Chapter 7 Trustee.[1]

Together, the Debtor, John Michael Eddy ("Mike") and his brother, Frank Raymond Eddy ("Ray") were entrepreneurs over the last 40 years. At one time, Mike and Ray each had over $20 million in assets. Both brothers ultimately filed Chapter 7 cases in this Court.[2] As of the trial of this matter, the bankruptcy estate of Mike and his wife and co-debtor, Nancy, consists of assets totaling less than $800,000. Creditors in this case hold claims in excess of $4 million.

The claimant is an irrevocable trust established by Mike over 35 years ago. The trustee of the JME Trust is Mike's brother, Ray. In 1986, Mike issued a promissory note to the JME Trust in exchange for assets he received from the trust (the "1986 Note").[3] The 1986 Note was in the principal amount of $979,200, bearing interest at 7.45%, and became due on December 20, 2001. Through two later notes, the 1986 Note was restated in 2008 and again in 2010 (the "Restated Note").[4] The Restated Note is in the principal amount of $2,467,804, which includes interest that has accrued since 1986, with an interest rate of 1%, payable on demand. At all times, the 1986

---

[1] *See Henkel v. Brothers Mill, Ltd.*, Adv. No. 6:13-ap-00112-CCJ and *Henkel v. Eddy, Jr., as Tr. of the John Michael Eddy Trust of 1982*, Adv. No. 6:13-ap-00115-CCJ.
[2] Ray's case is *In re Frank Raymond Eddy, Jr.*, Case No. 6:12-bk-00519-CCJ.
[3] Debtors' Ex. No. 4 (Doc. No. 181-4).
[4] Debtors' Ex. No. 5 (Doc. No. 181-5) and Debtors' Ex. No. 6 (Doc. No. 181-6).

Note has been secured by a life insurance policy on Mike. At one time that life insurance policy had a face value of $3 million, but as of the date of trial the policy had been reduced to $1 million.[5] Mike has never paid any principal or interest on the 1986 Note or the Restated Note.

In 2015, the Court held a three day trial in two consolidated adversary proceedings brought by the Chapter 7 Trustee (the "Consolidated Adversary Proceeding"). After trial, the Court issued a memorandum opinion finding that the JME Trust was (i) a valid irrevocable trust whose assets could not be brought into the estate, (ii) an insider of the Debtors within the meaning of Section 101(31) of the Bankruptcy Code, and (iii) an active participant in, and beneficiary of, Mike's fraudulent scheme to keep assets away from his other creditors.[6] In doing so, the Court found that Mike transferred significantly all of his assets to a limited partnership--the Brothers Mill, Ltd. (the "Brothers Mill")--and then immediately pledged his interest in the Brothers Mill to the JME Trust as additional collateral for the Restated Note.[7] As a result of these findings, the Court entered a final judgment in favor of the Chapter 7 Trustee, which avoided Mike's transfer to the Brothers Mill and his pledge to the JME Trust.[8] The Debtors' bankruptcy estate consists primarily of the assets recovered from these avoided fraudulent transfers.

The JME Trust's claim (Claim No. 9) was originally filed in the case in 2012 (the "Original Claim"). The Chapter 7 Trustee objected to the Original Claim on the grounds that (i) it failed to attach supporting documents, (ii) the collateral for the security interest was not properly identified, and (iii) in any event, the claim should be equitably subordinated (Doc. No. 163; the "Original Objection"). The JME Trust filed a response to the Original Objection, denying that there were

---

[5] *See* Debtors' Ex. No. 7 (Doc. No. 181-7).
[6] *Henkel v. Brothers Mill, Ltd.*, Adv. No. 6:13-ap-00112-CCJ (Doc. No. 71).
[7] *Id.*
[8] *Henkel v. Brothers Mill, Ltd.*, Adv. No. 6:13-ap-00112-CCJ (Doc. Nos. 71 and 72).

3

any grounds to subordinate the claim and agreeing to amend the claim to include supporting documentation and to identify the collateral (Doc. No. 169; the "Response").

At trial, the Court admitted into evidence an amended claim by the JME Trust which attached the supporting documents and identified the collateral (the "Amended Claim").[9] By the Amended Claim, JME Trust asserts that it is owed $2,467,804, and is partially secured by the cash value of Mike's life insurance policy. Based upon the evidence at trial (including the Amended Claim), the Chapter 7 Trustee filed an amended objection (Doc. No. 187; the "Amended Objection"). By the Amended Objection, the Chapter 7 Trustee asserts that in addition to equitable subordination, the Amended Claim should be disallowed because (i) the 1986 Note expired and was not renewed, (ii) there was no consideration for either the 2008 or 2010 Note, (iii) the debt is barred by the doctrine of laches, and (iv) documentary taxes were never paid on any of the notes.

## Allowance of the Claim

Under Section 502 of the Bankruptcy Code, a proof of claim is presumed valid until an interested party objects.[10] The burden of proof on an objection to claim is a shifting one depending on whether the presumptive validity of the claim has been rebutted and whether the particular objection constitutes an affirmative defense under applicable state law.[11] Here, regardless of which party has the burden of proof, the Court finds that the Amended Claim is valid and should be allowed under Section 502 of the Bankruptcy Code.

By the Amended Objection, the Chapter 7 Trustee first argues that any claim under the 1986 Note is barred by Florida's statute of limitations, which requires that an action on a

---

[9] Debtors' Ex. No. 2 (Doc. No. 181-2). The Amended Claim was filed the day after trial on December 18, 2015.
[10] *See In re Baggett Bros. Farm Inc.*, 315 F. App'x 840, 843 (11th Cir. 2009).
[11] *See In re Bavelis*, 490 B.R. 258, 308 (Bankr. S.D. Ohio 2013); *In re White*, 168 B.R. 825, 829 (Bankr. D. Conn. 1994).

promissory note be brought within five years of the date the note became due.[12]  The 1986 Note became due on December 20, 2001, and was not paid within five years.  As such, the limitations period under Florida law expired.  The Court finds however, that the 1986 Note was revived by both the 2008 Note and the 2010 Note.

In discussing this issue, both parties correctly cite to Florida Statute Section 95.04 as controlling law.  Under that statute and related case law, where an action is not brought on a promissory note within five years of its due date, the promise to pay is barred *unless* "an acknowledgement of, or promise to pay" is later provided "in writing signed by the party to be charged."[13]  Based upon the testimony of Mike and Ray at trial and the notes themselves--which are both in writing and signed by Mike--the Court finds that both the 2008 Note and the 2010 Note were such later "acknowledgements" or "promises to pay" the expired 1986 Note.  Accordingly, despite the fact that by 2006, the debt underlying the 1986 Note was barred by Florida's statute of limitations, the debt was revived in 2008 and again in 2010.  This revived debt is now represented by the Restated Note.

The Restated Note is payable on demand.  Florida Statute Section 95.031 provides that "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."[14]  Section 95.031(1) in turn provides that a "cause of action accrues when the last element constituting the cause of action occurs."[15]  Where a note is payable on demand, the cause of action accrues and the statute begins to run on the date that demand for payment is first made and there has been a failure to pay.[16]  The first time that a demand was made on the

---

[12] Fla. Stat. § 95.11(2)(b) (2016).
[13] *See* Fla. Stat. §95.04; *Nolden v. Nolden*, 650 So. 2d 84, 85 (Fla. 5th DCA 1995).
[14] Fla. Stat. §95.031.
[15] *Id.*
[16] *Id. See also Mosher v. Anderson*, 817 So. 2d 812, 814 (Fla. 2002).

revived debt and Mike failed to pay it was when the JME Trust filed the Original Claim in this case. Accordingly, the statute of limitations did not start to run prior to the filing of this case. Because Section 108 of the Bankruptcy Code tolls any statute of limitations, the Amended Claim, consisting of the underlying debt first established by the 1986 Note and revived by the Restated Note, is not time-barred.[17]

Next, the Chapter 7 Trustee argues that even if the debt was revived, the debt cannot be enforced because the 2008 and 2010 Notes were not supported by any consideration. The Chapter 7 Trustee concedes that "there *was* consideration" for the 1986 Note.[18] The Trustee further concedes that a promise to pay an antecedent debt constitutes sufficient consideration.[19] Because the 2008 and 2010 Notes were each such a promise to pay an antecedent debt--the 1986 Note--the Court finds that there was sufficient consideration.

Finally, the Chapter 7 Trustee argues that the Restated Note is unenforceable because Mike never paid for documentary stamp taxes. In support, the Chapter 7 Trustee relies on Florida Statute Section 201.08 as it existed in 2001, claiming the statute expressly provides that a note is not enforceable unless such taxes have been paid. In 2002, the Florida legislature amended Section 201.08, and as amended, promissory notes (as opposed to mortgages) *are* enforceable even absent the payment of documentary stamp taxes.[20] As such, the Restated Note is enforceable.

---

[17] The Chapter 7 Trustee also asserts that the claim is barred under the doctrine of laches. Among other things, laches requires an unreasonable delay between the time the debt first became legally due and the time a claim is asserted. Here, the Restated Note became due on demand simultaneously with the filing of the proof of claim and no delay whatsoever occurred.
[18] Trustee's Post Trial Memorandum (Doc. No. 186).
[19] *Id.*
[20] *See Deman Data Sys. V. Schessel*, 2013 WL 2708538, at * 12 (M.D. Fla. 2013)(Plaintiff could enforce claim on promissory note without alleging payment of document stamp taxes because Fla. Stat. §201.08 (1)(a) does not state that promissory notes are unenforceable until the taxes are paid); *Glenn Wright Homes (Delray) LLC v. Lowy,* 18 So.3d 693, 696-97 (Fla. 4th DCA 2009)(Fla. Stat. §201.08(1) does not prohibit enforcement of an unsecured promissory note for nonpayment of documentary stamp tax given the amendment of the statute).

For all of these reasons, the Court concludes that the underlying debt first established by the 1986 Note and subsequently revived by the Restated Note is valid and allowed under Section 502 of the Bankruptcy Code. Despite this finding however, for the reasons set forth below the unsecured portion of the Amended Claim must be equitably subordinated to all other claims in the case.

Equitable Subordination

Since the inception of this contested matter, the Chapter 7 Trustee has at all times argued that JME Trust's claim should be equitably subordinated under Section 510 of the Bankruptcy Code. The Chapter 7 Trustee's claim objection was heard by this Court in a three hour trial, as a contested matter under Bankruptcy Rule 9014. The Court took evidence, heard oral argument and the parties submitted post-trial briefs. Only after completion of the trial did the JME Trust assert (in its post-trial brief) that the Chapter 7 Trustee should have raised the equitable subordination issue in the form of an adversary proceeding rather than a contested matter. The JME Trust argues that this procedural defect is fatal to the Chapter 7 Trustee's request.[21]

The JME Trust is technically correct that the issue of equitable subordination should have been asserted in an adversary proceeding. Bankruptcy Rule 3007(b) provides that "a party in interest shall not include a demand for relief of the kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."[22] And Rule 7001 in turn provides that an adversary proceeding includes "a proceeding to subordinate any allowed claim or interest."[23]

---

[21] Debtors' and Claimant's Post Trial Brief (Doc. No. 188).
[22] Fed. R. Bankr. P. 3007(b).
[23] Fed. R. Bankr. P. 7001(8).

Despite the Debtors' argument to the contrary however, the requirement that an adversary proceeding be filed is not absolute.[24] Even if a matter should, under the Bankruptcy Rules, be tried in the context of an adversary proceeding rather than a contested matter, where the parties have received sufficient due process, a court will not elevate form over substance and may consider the claim on its merits.[25] In doing so, courts have found that where the record demonstrates that (i) an evidentiary hearing was held (ii) the parties were on notice that the issue was being litigated and (iii) the parties had ample opportunity to present their positions so that no prejudice occurred, sufficient due process has been served and the court should proceed on the merits.[26]

From the beginning of this contested matter, the parties have been on notice that the Chapter 7 Trustee sought to equitably subordinate the JME Trust's claim. The parties had competent and experienced counsel. The parties had every opportunity to raise this procedural issue before and during trial and failed to do so. And neither the Debtors nor the JME Trust even allege that they were prejudiced by having the issue heard in the context of a contested matter rather than an adversary proceeding. The Court finds that under these circumstances, the parties have received all the due process necessary and the issue of equitable subordination is properly before the Court for adjudication on the merits.

Section 510 of the Bankruptcy Code allows a bankruptcy court to "subordinate for purposes of distribution all or part of an allowed claim to all or part of other allowed claims." [27] Binding

---

[24] *In re Strata Title*, LLC, 2014 WL 661174, *7 (9th Cir. B.A.P. 2014).
[25] *In re Swizzlestick, L.L.C.*, 253 B.R. 264, 267 (Bankr. W.D. Mo. 2000) (court will not elevate form of the proceeding over substance if the objecting party was afforded due process).
[26] *See In re Strata Title*, LLC, 2014 WL 661174, *7; *In re Command Servs. Corp.*, 102 B.R. 905, 908 (Bankr. N.D.N.Y. 1989) ("While there is merit to [movant's] contention that a determination as to the validity, priority and extent of a lien is properly brought before a bankruptcy court within the context of an adversary proceeding pursuant to Bankr. R. 7001(2) rather than as a contested matter pursuant to Bankr. R. 9014, courts have concluded that where the rights of affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed."), and cases cited therein.
[27] 11 U.S.C. § 510(c)(1).

precedent in the Eleventh Circuit authorizes a court to equitably subordinate a claim where three elements--known as the *Mobile Steel* standard--are present:

> (1) that the claimant has engaged in some sort of inequitable conduct;
> (2) that the conduct has injured other creditors or given unfair advantage to the claimant; and
> (3) that subordination is not inconsistent with bankruptcy law.[28]

And where as here, the claimant is an insider, the Court must also apply two additional factors. First, in examining the JME Trust's conduct, the Court must subject it "to special scrutiny, examining [it] with a large measure of watchful care."[29] Second, the Chapter 7 Trustee need only present material evidence of inequitable conduct by the JME Trust and it is then up to the trust to prove both good faith and the fairness of its dealings or the claim *will be* equitably subordinated.[30]

"In the context of equitable subordination, the type of conduct that has been considered 'inequitable' generally falls within the following categories: (1) fraud, illegality, breach of fiduciary duties (2) undercapitalization, and (3) claimant's use of the debtor as a mere instrumentality or alter ego."[31] Although these categories generally describe the *type* of conduct considered, they are not exhaustive and are not intended to describe the *degree* of culpability required.[32] Thus for example, it is well established that proof of actual fraud need not be shown.[33]

An apt description of inequitable conduct in the subordination context, relied upon by numerous courts, provides:

---

[28] *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977).
[29] *Allied E. States Maint. Corp. v. L.E. Miller, Jr. (In re Lemco Gypsum, Inc.)*, 911 F.2d 1553, 1557 (11th Cir. 1990) (internal citations omitted).
[30] *See id. See also In re N & D Props., Inc.*, 799 F.2d 726, 731 (11th Cir. 1986); *Wallach v. Buchheit (In re Northstar Dev. Corp.)*, 465 B.R. 6, 16 (Bankr. W.D.N.Y. 2012).
[31] *Official Comm. of Unsecured Creditors v. Liberty Savs. Bank (In re Toy King Distribs.)*, 256 B.R. 1, 198-99 (Bankr. M.D. Fla. 2000)(quoting In re Lifschultz Fast Freight, 132 F.3d 339, 344-45 (7th Cir. 1997)).
[32] *Id.* at 199.
[33] *See Machinery Rental Inc. v. Herpel (In re Multiponics, Inc.)*, 622 F.2d 709, 720 (5th Cir. 1980); *In re Beverages Int'l Ltd.*, 50 B.R. 273, 281 (Bankr. D. Mass. 1985).

> Inequitable conduct is conduct which may be lawful, yet shocks one's good conscience … a secret or open fraud … an unjust enrichment, not … by astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct.[34]

The Court finds that the JME Trust's conduct in this case falls squarely within this description. The JME Trust, led by the Debtor's brother Ray as Trustee, participated in the Debtors' actual fraudulent scheme to keep assets away from other creditors. The JME Trust was the direct beneficiary of that scheme by obtaining a security interest in the very assets hidden from other creditors. Although outright fraud need not be shown to prove inequitable conduct, the Court believes here that the Debtor's actual fraud--which the Court has previously adjudicated--may be imputed to the JME Trust.[35] And even absent such imputed fraud, the Court finds that the JME Trust's actual participation in and benefit from this fraudulent scheme is itself inequitable enough to shift the burden of proof to the claimant.

The JME Trust attempts to avoid equitable subordination by pointing out that despite its later misconduct, the underlying debt (the 1986 Note) was obtained in good faith and was fair. Although there is no evidence that the 1986 Note was made in bad faith or was unfair at the time, those facts alone are not enough to avoid subordination. To equitably subordinate a claim, the conduct at issue is not limited to the manner in which the claim itself was originally acquired, but may arise out of any unfair conduct of the creditor over its course of dealings with the debtor.[36] The Court finds here that JME Trust's active participation in and benefit from Mike's fraud was

---

[34] *In re Toy King Distribs.*, 256 B.R. at 199 (quoting *In re Harvest Milling Co.*, 221 F.Supp. 836, 838 (D. Or. 1963)); *In re Beverages Int'l Ltd.*, 50 B.R. 273, 281-82 (Bankr. D. Mass. 1985)(quoting same).
[35] *See Wilson v. Huffman (Missionary Baptist Found. of America)*, 818 F.2d 1135, 1146 (5th Cir. 1987)(inequitable conduct may be imputed to party "intimately connected" with the transactions sought to be subordinated).
[36] *See In re Mobile Steel Co.*, 563 F.2d 692, 700-01 (5th Cir. 1977).

not just unfair and inequitable, but egregious. The JME Trust has failed to even allege that this conduct was in good faith or in any way fair to other creditors.

The second prong of the *Mobile Steel* standard--that the conduct injured other creditors or gave an unfair advantage to the JME Trust--has also been met. The JME Trust's participation in the fraudulent transfers and receipt of the pledged assets of the Brothers Mill, both harmed other creditors (by taking away assets) and gave the JME Trust an unfair advantage (by giving it an enhanced secured claim). Indeed, absent the Court's avoidance of these transfers, the Debtors' other creditors in this case would never have had access to these assets.

As to *Mobile Steel's* third prong, the Court finds that subordination is consistent with bankruptcy law. First of all, it is important to note that *Mobile Steel* was decided under the former Bankruptcy Act, which did not include the express equitable subordination provision of Section 510. *Mobile Steel* and prior cases relied instead on long held equitable principles allowing a bankruptcy court to subordinate a claim under various circumstances. By Section 510 however, Congress expressly authorized a bankruptcy court to equitably subordinate a claim, which clearly makes the concept "consistent with bankruptcy law." The Court agrees with numerous decisions holding that as a result of Section 510, the third element of *Mobile Steel* is either moot, or at the very least, of minimal significance.[37] To the extent this third prong has any relevance today, its only purpose is as "a reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely

---

[37] *See e.g. In re Hydrogen, LLC.,* 431 B.R. 337, 360-61 (Bankr. S.D.N.Y. 2010) (*Mobile Steel's* third prong carries minimal significance today because the Bankruptcy Code explicitly provides for equitable subordination); *80 Nassau Assocs. v. Crossland Fed. Savs. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 841 (Bankr. S.D.N.Y. 1994) (once the first two prongs of *Mobile Steel* are met it is difficult to imagine a situation when equitable subordination would not apply); *Diasonics, Inc. v. Ingalls,* 121 B.R. 626 (Bankr. N.D. Fla. 1990) (Mobile Steel's third prong rendered moot with implementation of the Bankruptcy Code and §510).

because the court perceives the result is inequitable."[38] The Court finds that under the circumstances of this case, equitable subordination is warranted.

Now that the Court has concluded that the Amended Claim should be subordinated, the question becomes to what extent. That is because under the principles of equitable subordination, a claim should be subordinated "only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct."[39] For that reason, courts must attempt to quantify the harm caused by the misconduct.[40] In many circumstances however, it is not feasible to quantify the harm.[41] Where the harm is pervasive throughout the creditor body and causes such general prejudice that is difficult to quantify, a bankruptcy court has the power to subordinate the *entire* claim, without more.[42] Here, the Court has unwound the fraudulent scheme the JME Trust participated in, and the assets are back in the estate where they belong. The question is whether that avoidance alone is enough to "offset the harm" so as to entitle the JME Trust to share in the estate assets equally with other creditors. The Court finds that it is not.

Although the transfers have been avoided, doing so has caused the estate to incur significant administrative costs in the form of the Chapter 7 Trustee's substantial attorney fees and costs. The transfers also caused significant delay in the creditors' ability to receive monies from the estate. Indeed, this case has been pending since 2012 and the fraudulent transfers occurred in 2010. To date, these creditors have not received any distributions on their claims. Under these circumstances, the Court finds that it is not feasible to quantify the harm done. It may be possible-

---

[38] *See U.S. v. Noland*, 517 U.S. 535, 539 (1996) (quoting DeNatale & Abram, The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors, 40 Bus. Law 417, 428 (1985)).
[39] *Mobile Steel*, 563 F.3d at 701.
[40] *See e.g. In re N & D Props., Inc.,* 799 F.2d 726, 732-33 (11th Cir. 1986); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 990-91 (3rd Cir. 1998); *In re Mid-American Waste Sys., Inc.*, 284 B.R. 53, 72 (Bankr. D. Del. 2002);
[41] *Citicorp,* 160 F.3d at 991.
[42] *See Official Comm. of Unsecured Creditors v. Liberty Savs. Bank (In re Toy King Distribs.),* 256 B.R. 1, 206-07 (Bankr. M.D. Fla. 2000).

-with much difficulty and further evidence--for the Court to quantify the amount of administrative costs incurred as a direct result of this misconduct. But how is it possible for the Court to quantify the creditors' lost time value of money caused by the delays in this case, and what portion of that delay was caused by the fraudulent scheme? This harm was pervasive throughout the creditor's body, and quantifying it is not feasible. The Court concludes that under these circumstances, the unsecured portion of the claim must be completely subordinated to the claims of all other creditors.

The Court is well aware that by subordinating the Amended Claim, the JME Trust will recover nothing from the estate. The Court finds that under the facts of this case, this is the right result and satisfies the Court's duty to assure the just and equitable distribution of the estate.[43] Indeed, even after equitably subordinating the Amended Claim, general unsecured creditors will only be receiving cents on the dollar.

Finally, although not raised by any of the parties, the Court has identified another troubling issue. At trial, the parties disputed the identity of the JME Trust beneficiaries. The parties agreed that the JME Trust had three beneficiaries, two of which were Mike's children. The Chapter 7 Trustee consistently argued that the third beneficiary was Mike's *former* wife, the mother of his children. The Debtors and the JME Trust argued that the third beneficiary was Mike's present wife, Nancy, the co-debtor in this case. Upon review of the evidence, the Court agrees with the Debtors and the JME Trust. As such, if this Court does not subordinate the Amended Claim, Nancy will share the estate with other creditors. This would be a direct violation of Section 726 of the Bankruptcy Code which prohibits a debtor from sharing in the estate until all creditors are paid in full.[44] For all of these reasons, the Court concludes that the entire unsecured portion of the

---

[43] *See In re Westgate-California Corp.*, 642 F.2d 1174, 1177 (9th Cir. 1981) (citing *Pepper v. Litton*, 308 U.S. 295 (1939)).
[44] *See* 11 U.S.C. §726.

claim of the JME Trust should be subordinated to the general unsecured claims of all other creditors.

Having made this determination however, the Court believes that the JME Trust and its beneficiaries (especially the Debtors' children) should be entitled to retain their security interest in the life insurance policy on Mike. That policy is itself an exempt asset and not property of this estate. As such, the Debtors' legitimate creditors will not be harmed by allowing the insurance policy to remain as collateral for the Restated Note.

## Conclusion

For the reasons set forth above, the JME Trust's claim is allowed under Section 502 of the Bankruptcy Code, but is equitably subordinated to the general unsecured claims of all other creditors under Section 510(c) of the Bankruptcy Code. The Court will enter a separate order consistent with this memorandum opinion.

Clerk's office to serve